**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| L.J.B, on his own behalf and by through his Parent and Natural Guardian, N.G., and on her own behalf,<br><br>        Plaintiffs,<br><br>-vs-<br><br>Saint Paul Public Schools, Independent School District No. 625, Steven Unowsky, individually and in his representative capacity,<br><br>        Defendants. | Civil File No. Unassigned<br><br><br>**COMPLAINT AND APPEAL**<br><br><br><br><br><br>**REQUEST FOR JURY TRIAL** |

For declaratory and injunctive relief, compensatory damages, reversal of the administrative hearing decision, and for attorneys' fees and costs.

## I. INTRODUCTION

This case is about what happens when a child with Autism Spectrum Disorder is treated as if he were a child with emotional and behavioral disorders.

This Court could read the administrative decision ("Decision") and have no inkling as to why the Plaintiffs requested an administrative hearing. The Court could read the Decision and the Defendant Minneapolis Public School's ("District") Post-hearing Memorandum and find no daylight between the District's and the Administrative Law Judge's ("ALJ") Decision.  The reason for this is the ALJ's Decision is a word-for-word adoption of the District's brief.  Nowhere in the decision is there any representation of the parent's ("Nici" "Nicola") and student's ("Lucius") facts or evidence.  Nowhere in the administrative decision is there mention of the substantial struggle the Plaintiffs undertook against the significant disability discrimination when

1

the student enrolled at Linwood Elementary or of the significant procedural and substantive violations under the Individuals with Disabilities Education Act ("Act").

Lucius is a young man with Autism Spectrum Disorder ("ASD"). Despite multiple diagnosis of Pervasive Developmental Disorder ("PDD") and recommendations from medical professionals and his mother, Nici, the Defendant District repeatedly refused to identify Lucius as ASD. Instead, the District insisted that Lucius was a child with an Emotional and Behavioral Disorder ("EBD"). EBD was not only the incorrect eligibility criteria but it was also the basis upon which the Linwood principal, Steven Unowsky, denied Lucius equal access to Linwood Elementary. After Nici was told by Mr Unowsky that Lucius could not attend Linwood because of his disability label of EBD, Nici fought her son's right to attend Linwood. Mr Unowsky informed Nici that Lucius would administratively transfer Lucius out of Linwood if he did attend. And Mr Unowsky did administratively transfer Lucius but not before subjecting Lucius to violations of his right to his stay-put placement through serial and repeated suspensions.

The Court will find that specific and relevant information is missing from the administrative record. This is because no discovery is permitted in an administrative hearing and Defendant has sole and exclusive control over all of the records. Despite efforts to have all education records produced, the Plaintiffs were denied specific document including but not limited to: 1) a comprehensive list of suspension dates; 2) a comprehensive list of exclusion dates; 3) a comprehensive list of alternative services provided during suspensions and exclusions; 4) any and all investigative information; and 5) a complete and comprehensive copy of the education records.

The action is brought to redress the rights of Lucius as a student with a disability the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*, and its

2

implementing regulations 34 C.F.R. Part 300, Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794, and its implementing regulations at 29 C.F.R. Part 104, as amended, ADA Amendments Act of 2008 ("ADAAA"), 42 U.S.C. § 12132, 42 U.S.C. § 1983 (Section 1983), and the Minnesota Human Rights Act, § 363A.03 against the Saint Paul Public Schools ("District").

The Administrative Law Judge ("ALJ") committed substantial errors of fact and law in rending the final decision on the 24th of September 2012 ("Decision"). Those errors include but are not limited to the following:

**ERRORS OF LAW**:

ERROR NO. 1:  The trial court erred as a matter of law by limiting the issues for hearing in violation of 20 U.S.C. § 1415(b)(6)(A); Minn. Stat. § 125A.091, Subd. 12; Subd. 15.

ERROR NO. 2:  The trial court erred as matter of law by not correctly applying the state eligibility criteria for Autism Spectrum Disorder and Emotional & Behavioral Disorders consistent with Minn. R. 3525.1325.

ERROR NO. 3:  The trial court erred as a matter of law by concluding that the Defendant District did not violate procedural safeguards including but not limited to: 1) no prior written notices or response to the parental written requests for identification, evaluation and services made on the 30th of November 2010; 5th, 10th, 11th and 13th of January 2011; 2) repeated and persistent violations of Lucius' stay-put placement through a series of, at times, undocumented suspensions and exclusions for which no alternative instruction was provided;  3) repeated violations of the state and federal re-evaluation time lines including timelines for written responses to requests, timelines for independent educational evaluations, development of IEP goals and services 4) repeated violations of the terms of two mediation agreements; 5) repeated (unwritten) denials of functional behavioral assessment and behavior intervention programs as well as requested changes to his IEP; and 6) refusal to provide Nicola with a complete set of education records.

ERROR NO. 4:  The trial court erred as a matter of law by concluding that the Defendant's commissions and omissions did not rise to substantive violations of state and federal law.

ERROR NO. 5:  The trial court erred as a matter of law by concluding that the Defendant's violations of state and federal law were not supported by a preponderance of reliable, probative and substantial evidence.

ERROR NO. 6:  The trial court erred as a matter of law by according the Defendant undue deference such that the Decision presented an *unaltered verbatim* repetition of the Defendant's Post-Hearing Brief, Findings of Fact and Conclusions of Law.

ERROR NO. 7:  The trial court erred as a matter of law when it deprived the Plaintiffs of their right to an impartial hearing by a qualified administrative law judge.

ERROR 8:

**ERRORS OF FACT**:

ERROR NO. 1:  The trial court erred as a matter of fact by concluding that Lucius was not assaulted and injured by the paraprofessional contrary to the weight and preponderance of reliable, probative and substantial evidence in the administrative record.

ERROR NO. 2:  The trial court erred as a matter of fact by concluding that Lucius was not denied equal access to Linwood Elementary contrary to the weight and preponderance of reliable, probative and substantial evidence in the administrative record.

ERROR NO. 3:  The trial court erred as a matter of fact by concluding that the Defendant did not violate Lucius stay-put placement through the series of suspensions that exceeded 10 school days without alternative services contrary to the weight and preponderance of reliable, probative and substantial evidence in the administrative record.[1]

ERROR NO. 4:  The trial court erred as a matter of fact by concluding that the Defendant did not violate Lucius' rights by extending suspensions indefinitely and not recording the extensions contrary to the weight and preponderance of reliable, probative and substantial evidence in the administrative record.

ERROR NO. 5:  The trial court erred as a matter of fact by concluding that Lucius' rights as a student with disabilities were not violated by the punitive administrative transfer from Linwood Elementary contrary to the weight and preponderance of reliable, probative and substantial evidence in the administrative record.

ERROR NO. 6:  The trial court erred as a matter of fact by concluding that Lucius was not assaulted and injured by the paraprofessional contrary to the weight and preponderance of reliable, probative and substantial evidence in the administrative record.

ERROR NO. 7:  The trial court erred as a matter of fact by concluding that neither Lucius, Kailin nor Nicola had been the subject of retaliatory actions by the Defendant and its

---

[1] Indeed, the ALJ does not record the number of days Lucius was suspended or the alternative services provided because the District did not keep an accurate record of either.

representative contrary to the weight and preponderance of reliable, probative and substantial evidence in the administrative record.

## II. JURISDICTION AND VENUE

The court has subject matter jurisdiction over this cause of action under 28 U.S.C. §§ 1331 and 1343(a)(4) because the plaintiffs state questions under federal law.

The court has supplemental jurisdiction over the plaintiffs' claims under Minnesota law under 28 U.S.C. § 1367.

The plaintiffs have properly laid venue in this court in accordance with 28 U.S. § 1391(b) and LR D. Minn. 83.11 because the substantial number of events giving rise to this cause of action took place in the District of Minnesota.

## III. PARTIES

1. Lucius is a nine year-old male born on the 7th of July 2003. He is a resident of Saint Paul Public Schools. He resides with his parent, Nicola Giusti (N.G.) and his younger brother, K.G.B (Kailin) at 152 Biglow Lane, Apartment D, Saint Paul, Minnesota 55117.

2. Ms Nicola Giusti is the natural parent and guardian of Lucius.

3. Independent School District Number 625, Saint Paul Public Schools is a political subdivision of the State of Minnesota with its principal place of business at 360 Colborne Street Saint Paul, Minnesota 55102.

4. Steven Unowsky was at all times material herein the Principal of Linwood Elementary and is now an Assistant Superintendent for Saint Paul Public Schools.

## IV. FACTS

5. The Student specifically incorporates by reference all preceding paragraphs as if fully set forth herein.

6. Lucius began attending kindergarten in 2008/09 at Bruce Vento Elementary ("Vento") in the Defendant District. Lucius received Early Childhood Special Education ("ECSE") services under the Developmentally Delayed category. He was retained for a second year of kindergarten to ensure that he was prepared for the first grade. At the end of April 2010 of his second kindergarten school year Lucius was re-evaluated for special education services. The evaluation completed by the District at the end of the school year found that Lucius was eligible under the state eligibility criteria for Emotional and Behavioral Disorders ("EBD"). At the time of the evaluation, Lucius had been diagnosed with Pervasive Developmental Disorder ("PDD") which is an Autism Spectrum Disorder ("ASD"). The decision to deny him eligibility under the state ASD eligibility criteria was based upon a single and subjective observation by a teacher. The singular teacher observation that Lucius was not eligible under ASD was at odds with the recommendation by his parent, his medical professionals and all other behavioral information contained within the re-evaluation report. Nicola objected in writing in to this EBD eligibility criteria and requested in writing that the District reconsider its re-evaluation of her son. She specifically requested that the District consider ASD criteria for her son and provided the District with the multiple written recommendations from medical professionals working with Lucius that he was ASD.

7. At the time of the hearing, the only re-evaluation provided by District was the report from the conclusion of his kindergarten school year dated the 27th of April 2010.

8. Because of concerns related to Vento remaining on the AYP list year after year, Nicola attempted to enroll her son, Lucius, at the neighborhood school, Chelsea Heights (2010/11). Lucius and his brother were denied enrollment at Chelsea Heights because the District stated it was not responsible to provide transportation from her home to Chelsea Heights.

6

9.      Nicola sought out other schools and decided on Linwood Elementary. She filled out the applications with the District's Placement Center for both her sons and was alter informed that her sons were enrolled at Linwood. Nicola contacted Linwood prior to the start of the school year to ensure that her sons were enrolled. She spoke with the secretary, Betty Laughlin, at Linwood. In her discussions, she mentioned to the secretary that both her sons were on IEPs.

10.     After ensuring Linwood Elementary had both of her sons' IEP she was called by the Linwood secretary and told that Lucius could not attend Linwood because of his disability label of "EBD." Over a series of telephone calls between Nicola, the secretary of Linwood, and Steven Unowsky, Principal at Linwood. Mr Unowsky told Nicola repeatedly that Lucius could not attend Lindwood due to his disability category of EBD. Mr Unowsky also told Nicola that if she persisted in bringing Lucius to Linwood, he would use an "administrative transfer" to remove Lucius to another school. Nicola put all of these interactions into writing to the District Ombudsman's office at the beginning of the school year but received no response.

11.     Lucius and his brother, Kailin, began to school year two days late at Linwood. Almost immediately, Lucius was subject to suspensions for behavior that was directly related to his Pervasive Developmental Disorder. The suspensions were initiated by Unowsky and persisted until Lucius was removed from Linwood through an administrative transfer initiated by Unowsky. In addition to suspending Lucius well in excess of 10 school days between the time Lucius began school on the September 10, 2010[2] and the time that he was administratively transferred on 1st of March 2011, Lucius was excluded from school in excess of 36 school days. The District did not keep a record of the suspensions, unilateral extensions of suspensions, exclusions without suspension or the alternative services provided to Lucius.

---

[2]  Lucius and Kailin were not permitted to start school on the 8th of September 2010 because Unowsky was telling Nicola that the boys could not attend Linwood Elementary.

7

12.     Nicola put all of her requests for assistance and services in writing.  Despite producing facsimile verifications for each correspondence, District administration denied ever receiving her correspondence. The correspondence included but was not limited to requests for re-evaluation, consideration for ASD criteria, a functional behavioral evaluation, investigation into disability discrimination and reprisals, IEP team meetings, changes to the IEP, and concerns over staff treatment of Lucius.  At no time did the District respond in writing to these requests and at no time was an IEP team meeting held to discuss her requests.  Instead, all of the meetings were related to the suspensions, exclusions and discipline Defendant was meting out weekly if not daily to Lucius.

13.     On the 4th of February 2011, Nicola and Defendant District met for the first mediation. The mediation was requested by Nicola.  As a result of the mediation, the parties agreed to the following: 1) an IEE; 2) District investigation into "possible requirement for educational services subsequent to 10 cumulative days of suspension"; 3) parent will visit Frost Lake and Rondo education programs.  Nicola immediately visited Frost Lake and Rondo.  No investigation was ever conducted into the educational services and the IEE was not initiated or completed.

14.     Kathy Sekorski restrained Lucius on the 17th of February 2011. Sekorski asserted that Lucius hit her in the face and that she was bruised. When Lucius came home that evening, Nicola saw bruising and nail marks on her son. She immediately called the police and reported and photographed the injuries.  She also immediately called Linwood to report the injuries.  The police investigated the injuries. The District's incident report falsely claimed that Sekorski was injured in the restraint including falsely asserting that she bore bruises.  The following day the police inspected Sekorski and found no evidence of bruising or any other physical injury.  When Linwood administration refused to take a report on Lucius injuries, speak with Lucius about the

injuries or examine the physical injuries, Nicola requested a restraining order against Sekorski. An evidentiary hearing was held on the restraining order but the order was dismissed when Nicola was unable to produce needed evidence that was in the sole and exclusive control of the Defendant District.

15. Steven Unowsky initiated an administrative transfer on the 1st of March 2011. Nicola appealed the transfer consistent with the District policy. An administrative transfer, according to District policy, is used as a disciplinary measure. A non-disciplinary transfer was available.

16. While the administrative transfer was pending, Mr Unowsky informed Nici that Lucius could not return to Linwood Elementary. A limited number of home-bound instruction hours were provided. Unowsky unilaterally told Nicola where the homebound instruction would take place including, time, dates and location. Unowsky also required that Nicola be in attendance at the homebound sessions. The homebound instruction sessions were scheduled late in the day and would require Nicola to miss picking her seven year old son up from the bus. Unowsky recommended that Nicola let Kailin go home by himself. Nicola informed Unowsky that the bus drivers' will not permit a disabled seven year old to leave the bus unattended. Because Nicola is without transportation, a fact of which Unowsky was aware, Kailin was required to leave school early in order for him to be properly transported home with a supervising adult.

17. On the 9th of March 2011, Steven Unowsky issued a spurious and non-appealable "No trespass order" against Nicola without any reasonable basis in fact. As a result, Nicola was unable to attend either of her sons' IEP team meetings, school conferences, or any other school functions.

18.     Lucius was transferred to Benjamin Mays Elementary (14 April 2011) with an IEP that was unilaterally changed by the District. While his IEP goals and objectives were never changed, Lucius did well in the program because of the caring professionals.

19.     Nicola continued with her requests for relief for which no action from the District was forthcoming. Nicola requested a second mediation in June 2011 but the mediation was not scheduled until the 21st of November 2011. The reason for the second mediation was because the District had not followed through on any of the terms of the previous mediation agreement.

20.     The District conducted an evaluation of Lucius in June 2012 without the knowledge or consent of Nicola. The evaluation was used in the administrative hearing, over Nicola's objection, to denied Lucius eligibility under ASD criteria.

21.     The administrative hearing decision, which was a verbatim recital of the District's brief and indeed the "properties" section of the electronic decision show that the sole author of the Administrative Law Judge's decision was Defendant's law clerk, Jade Holman, was provided to the parties on the 24th of September 2012. The Decision affirmed the District's position that Lucius was not eligible under ASD. An IEP team meeting was held between the parties on the 5th of October 2012. At that time, the District stated to Nicola that they agree that Lucius is eligible as an ASD student. No additional evaluations were conducted between the unlawful assessment in June 2012 and the IEP team meeting on the 5th of October 2012.

22.     The Administrative Law Judge dismissed all non-IDEA claims without prejudice prior to the administrative hearing because of he lacked jurisdiction.

## IV. CLAIMS

### COUNT ONE
### INDIVIDUALS WITH DISABILITIES EDUCATION ACT &
### STATE SPECIAL EDUCATION LAW, MINN. STAT. § 125A.091.

23. The Student specifically incorporates by reference all preceding paragraphs as if fully set forth herein.

24. The Student appeals the administrative hearing decision and requests that the decision be overturned in its entirety for the errors in law and fact as reflected on the administrative record.

25. The Student specifically sets forth the actual issues raised in the administrative hearing:

25.1. The District did not develop an IEP for Lucius that met his unique special education needs, in violation of 34 C.F.R. § 300.320 (a)(2)(i)(A) and (B) and Minn. Stat. § 125A.08(a)(1). The IEP must address the student's need to develop skills to live and work as independently as possible within the community and the IEP team must consider positive behavioral interventions, strategies, and supports that address disability-related behavior. Minn. Stat. § 125A.08(a)(1).

25.2 The District denied the parental requests for re-evaluation of Lucius' primary disability when provided with the medical diagnosis of Autism nor did it provide the parent with prior written notice with an explanation for the denial as required by Minn. Stat. § 125A.091, Subd. 2. See also, 34 C.F.R. § 300.531, 64 Federal Register No. 48 page 12632 (March 12, 1999).

25.3 The District did not properly identified Lucius' eligibility in all areas of his identified needs including his deficits in attending to tasks, self-regulation, and completing his school work as required by 20 U.S.C. §§ 1401(3); 1412(a)(3) and 34 C.F.R. § 300.311(a).

25.4 The District did not have in effect policies and procedures to ensure children with disabilities, and who are in need of special education and related services, are identified, located, and evaluated. 34 C.F.R. § 300.125(a)(1)(i); Minn. R. 3525.0750. In the alternative, if the District did have the policies and procedures in place, District administration deliberately disregarded those policies and procedures.

25.5 The District declined to follow the eligibility requirements for each of the special education disability categories. See Minn. R. 3525.1325 through Minn. R. 3525.1350. For each disability category, Minnesota rules set forth what data is necessary to determine if a student meets the eligibility criteria by meeting the disability definition and criteria to establish its adverse impact on the student's educational performance.

11

25.6    The District did not develop or implement positive behavior interventions are to be used with students with disabilities in violation of Minn. R. 3525.0850.  Rather than focus on skill acquisition, the behavioral interventions used were punitive and excluded him from the education setting.  In addition, the District review Lucius' IEP in light of its repeatedly use the regular discipline policy against Lucius.

25.7    The District did not develop an IEP that took into consideration behaviors that impeded Lucius' learning or strategies, including positive behavioral interventions and supports to address that behavior contrary to Minn. R. 3525.2810, subp. 2B(1).

25.8    The District unilaterally, without the benefit of due process, changed Lucius' educational placement nor did it serve prior written notice on the child's parent in violation of Minn. R. 3525.3600, 34 C.F.R. § 300.503, and Minn. Stat. § 125A.091.

25.9    The District did not design Lucius' IEPs to meet his needs that result from his disability to enable him to be involved in and make progress in the general education curriculum [and] meet each of the child's other educational needs that result from the child's disability contrary to 34 C.F.R. § 300.320 (a)(2)(i)(A) and (B).

25.10   The District did not take into consideration the harmful effects on the student and the quality of services that he needed in selecting the least restrictive environment in violation of 34 C.F.R. § 300.116(d).  In addition, the District repeatedly removed Lucius from his regular education setting solely because it was unwilling to provide the needed modifications in the regular education setting.

25.11   The District did not identify the frequency and severity of the target behaviors, the positive behavior interventions used and the effectiveness of the intervention or design interventions based on his present levels of performance, education needs and goals and objectives, for which conditional interventions were being used in violation of  Minn. R. 3525.2900, subp.

25.12   The District denied Lucius access to educational professionals who were trained in the disability category of Autism Spectrum Disorder.

25.13   The District denied Lucius' eligibility under the appropriate eligibility criteria, opting for the more stigmatizing Emotional/Behavioral Disorder label by relying exclusively on secondary impeding behavior, and in some instances, a singular act, that was the direct result of the lack of adequate special education and related services in violation of 20 U.S.C. § 1414(b)(2); 34 C.F.R. §§ 300.306.

25.14   The District did not adequately consider input from Lucius' Parent in planning and programming as required by the IDEA, 20 U.S.C. § 1414(b)(2); specifically, the District repeatedly and consistently disregarded the Parent's requests for services and information regarding Lucius' disabling conditions.  On the contrary, the District repeatedly assured the Parent that Lucius was making progress and thereby receiving meaningful educational benefit from the public school program.

25.15   The Districts did not timely develop, review and revise his education programs to meet his unique needs as required by the IDEA, 20 U.S.C. § 1412(a)(4), § 1414(d)(1)(A), and § 1414(d)(4).  The proposed and implemented IEPs were not timely revised to address his lack of progress in all areas of education need.

25.16   The District did not permit the Parent meaningful participation in IEP team meetings and the development of special education programming when it completely ignored parental requests made both during meeting and in writing as required by the IDEA, 20 U.S.C. § 1415 (b)(1); 34 C.F.R. §§ 300.502(c); 305(a)(1)(i); 306(c).

25.17   The District did not consistently and accurately measure and report Lucius' progress on his IEPs or in the general education curriculum, as required by the IDEA, 20 U.S.C. § 1414(d)(1)(A).  Specifically, rather than producing objectively verifiable data supporting the claims that Lucius was making progress, the Districts' staff relied upon statements that he was making progress in his goals and objectives and did not define what progress meant to his attainment of IEP and academic skills.  Finally, rather than admitting that Lucius was not making progress, the District simply repeated goals and objectives over time while decreasing the goals to be obtained.

25.18   The Districts did not ensure that Lucius' Parent fully participated in meetings regarding identification, evaluation, educational placement and provision of a free appropriate public education when the Districts declined to provide educationally relevant information on his lack of progress, declined to provide the Parent with the education records, declined to provide the Parent with restraint reports, disregarded the Parent's requests for an evaluation, consideration of his Autism diagnosis, and finally barring the Parent from coming to the school in violation of the IDEA, 20 U.S.C. § 1415(b)(2).

25.19   The Districts did not provide sufficient information about Lucius' present levels of performance in the areas of his most significant need, and there is no statement within his IEP about how his disability affected his performance in the regular education environment and curricula, as required by the IDEA, 20 U.S.C. § 1414(d)(1)(A).

25.20   The District did not ensure that Lucius' IEP team adequately reviewed and revised his IEPs periodically, in light of specific concerns regarding his lack of progress, as required by the IDEA, 20 U.S.C. § 1414(d)(4); 34 C.F.R. § 300.343.

25.21   The Districts did not provide Lucius with the much needed supplementary aids and services necessary to support him in the least restrictive environment, as required by the IDEA, 20 U.S.C. §1412(a)(5), including developing assistive technology interventions to address his significant deficits in academic functioning.

25.22   The District did not develop a statement of the special education and related services Lucius would receive, as well as the program modifications or supports for school personnel to be provided, to enable Lucius to be involved in and make progress in the general education curriculum consistent with 34 CFR 300.320 (a)(4).

25.23    The District did not provide the Parent with timely notice for IEP team meetings or the opportunity for informed consent related to the education programming consistent with 34 C.F.R. §§300.300, .503, .504, when it significantly delayed the provision of proposed IEPs, called IEP team meetings without advance notice, transformed meetings into IEP team meetings without warning, and held IEP team meetings without the requisite staff.

25.24    The District did not develop appropriate behavioral supports and services to address the challenging behaviors that have resulted in exclusions and removal from the public school setting. 20 US.C. § 1414(d)(3)(B).

25.25    The District did not develop positive behavioral interventions so that Lucius could acquire appropriate behaviors and academic skills to enable him to function as independently as possible, as required by Minn. R. 3525.0850.

25.26    As a result, Lucius has not received services sufficient to confer meaningful benefit and provide his with a free appropriate public education in the least restrictive environment as required by the IDEA, 20 U.S.C. §1412(a)(1).

25.27    The District did not ensure that Lucius and his Parent were provided with the procedural protections including but not limited to manifestation determinations, behavioral intervention plans, and functional behavioral assessments that are mandated once the exclusions exceeded 10 school days as required by 34 C.F.R. § 300.519.

25.28    The Districts did not provide Lucius with an atmosphere that was conducive to learning and that has met his special education needs, as required by Minn. R. 3525.1400.

25.29    As a result, Lucius has not received services sufficient to confer meaningful benefit and provide him with a free appropriate public education as required by the IDEA, 20 U.S.C. §1412(a)(1).

25.30    The District denied Lucius a free appropriate public education in violation of corollary state law and the implementing special education rules.  Minn. Stat. Ch. 125A and Minn. R. Ch. 3525.

25.31    The District denied Lucius a free appropriate public education in the least restrictive environment free from discrimination in violation of Section 504 and its implementing regulations.  34 C.F.R. Ch. 104.

## COUNT TWO
## SECTION 504/ADAAA CLAIMS

26.    The Student specifically incorporates by reference all preceding paragraphs as if fully set forth herein.

27. The Defendants are public education institutions and receive federal funding for those purposes.

28. The Plaintiff was denied the opportunity to exhaust administrative remedies associated with her disability discrimination claims under Section 504 because the Administrative Law Judge found that he lacked jurisdiction to hear the claims.

29. Section 504 of the Rehabilitation Act of 1973 requires that no individual with a disability shall be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance. 29 U.S.C. § 794. In the instant case, Lucius was discriminated against not only because he was disabled but because of the improper application of the state eligibility criteria of EBD.

30. Further, the federal regulations implementing Section 504 require that no recipient of federal financial assistance may discriminate against an individual with a disability. 34 C.F.R. Part 104. The regulations also require that a recipient of federal financial assistance that operates a public education program:

   a. Must provide a free appropriate public education to each eligible child with a disability in the recipient's jurisdiction regardless of the nature or severity of the disability. 34 C.F.R. § 104.33(a).

   b. May not exclude any eligible disabled student from a public education. 34 C.F.R. § 104.33(d).

   c. Must provide education and related services designed to meet the individual needs of the disabled child as adequately as the needs of non-disabled children are met. 34 C.F.R. § 104.33(b).

   d. Must provide education in the least restrictive environment to the maximum extent appropriate to the needs of the disabled child, maintained by appropriate supplemental aids and services, as close to home as possible. 34 C.F.R. § 104.34(a).

    e.    Must provide comparable facilities, services and activities for disabled students. 34 C.F.R. § 104.34(d).

    f.    Must provide appropriate evaluations before any significant change in educational placements. 34 C.F.R. § 104.35(a).

    g.    Must make placement decisions based on information from a variety of sources which is documented and carefully considered, and must ensure that placement decisions are made by a group of knowledgeable persons. 34 C.F.R. § 104.35(c).

    h.    Must afford disabled students an equal opportunity to participate in non-academic and extracurricular services and activities. 34 C.F.R. § 104.37(a).

31. The Defendants and its representative in bad faith, with gross misjudgment or deliberate indifference deprived Lucius of his rights under Section 504 of the Rehabilitation Act as set forth herein. The deprivation of equal access to the education curricula, assaults, mistreatment and stigma by the District is disability discrimination that adversely affected his education, his bodily integrity, his self-esteem and his psychological well-being.

32. School districts and public school agencies are prohibited from the use of criteria and methods of administration that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability, or have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the program with respect to individuals with disabilities. The District's policies, practices and procedures of failing to take identify and evaluate Lucius's disabilities and their adverse impact on her education reflects a violation of these regulations as well as a failure in its obligations to provide reasonable accommodations to him. In addition, the District has interpreted its own policies to permit administrators to unilaterally transfer students because of the state eligibility criteria assigned to the student. The District systemically restrict access by disabled students to the modifications, accommodations, and special education services under Section 504 and the Individuals with

16

Disabilities Education Act. Any reasonable and knowledgeable educational professional would know that the actions of the educational professionals were violative of Lucius rights.

33. In committing the actions and omissions described herein, Defendants acted in bad faith, with gross misjudgment and deliberate indifference and have thereby intentionally discriminated against Lucius solely on the basis of his disability by denying him the benefits of his education in violation of Section 504 and, furthermore, retaliated against Lucius, Nicola and Kailin for their advocacy of Lucius' rights by himself and by his mother, Nicola in violation of Section 504.

34. As a direct result of the Defendant and its agents and employees failure to identify, evaluate and serve Lucius, he has suffered significant psychological damage that has resulted in lost educational opportunities, increased and exacerbation of anxiety and depression, loss of self-esteem, loss of bodily integrity and loss of daily functioning.

## COUNT THREE
## SECTION 1983 (SECTION 504)

35. The Student specifically incorporates by reference all preceding paragraphs as if fully set forth herein.

36. SPPS and Unowsky, in their official and individual capacities, have each acted under color of state law to deny Lucius the state and federal protections, including the right to a free appropriate public education, by knowingly and intentionally disregarding those rights under Section 504 in violation of Section 1983.

37. SPPS have acted under the color of state law to students with disabilities by engaging in the policy and procedure of using administrative transfers to usurp the rights of children with disabilities under state and federal law. The actions of SPPS knowingly and intentionally disregard the rights of children with disabilities, including Lucius.

## COUNT FOUR
### VIOLATION OF EQUAL PROTECTION AND DUE PROCESS UNDER THE 14TH AMENDMENT AND SECTION 1983

38. The Student specifically incorporates by reference all preceding paragraphs as if fully set forth herein.

39. By the acts and omissions described herein, including: failing to properly assess Lucius; mislabeling and mischaracterizing him as emotionally, behaviorally disordered; improperly placing him into EBD programming; failing to timely reassess, as required by law; failing to timely provide written notice, as required by law; failing to develop and implement services to which Lucius was entitled, Defendants have deprived Lucius of his substantive and procedural due process rights and his right to equal protection under the Fourteenth Amendment to the United States Constitution.

40. By mislabeling and mischaracterizing Lucius as EBD beginning in the Fall of 2010; by failing to comply with state requirements for assessing a student with EBD and ASD; and by failing to timely reassess pursuant to the parent's request, SPPS and Unowsky stigmatized Lucius and subjected him to public ridicule and physical harm as reflected in this complaint and the administrative record in violation of his procedural and substantive due process rights and his right to equal protection under the Fourteenth Amendment to the United States Constitution.

**DAMAGES**

41. As a direct and proximate cause of the Defendants actions in each claim set forth above, Lucius, Kailin and Nicola have suffered substantial humiliation and deprivations of the right to effectively advocate for Lucius; Lucius has suffered substantial educational and developmental losses, which adversely affects his future earning potential, and which has resulted in physical assaults, humiliation both in public and private, pain and suffering, damage to his social and

emotional development and interpersonal relationships as well as fees and costs in an amount subject to proof at trial.

## VI. REMEDIES

1. Declare that SPPS and Unowsky in their official capacities acted with bad faith, gross misjudgment and deliberate indifference and have thereby intentionally discriminated against Lucius based on his disability, and have, in addition, retaliated against Lucius, Kailin and Nicola for Nicola's advocacy, all in violation of Section 504;
2. Declare that SPPS and Unowsky in their individual and official capacities have acted in violation of Section 1983 to deprive Lucius of his rights under Section 504, his procedural and substantive due process rights under the Fourteenth Amendment to the United States Constitution;, and his rights under the Equal Protection Clause in the Fourteenth Amendment;
3. Award compensatory damages according to proof;
4. Award punitive damages according to proof;
5. Awarding attorneys' fees and costs associated with these claims as authorized under the IDEA and 42 U.S.C. § 1988; and
6. Such other relief as the Court deems appropriate.

Respectfully submitted,

**KANE EDUCATION LAW, LLC**.

Dated: 24 December 2012        /s/   Margaret O'Sullivan Kane
Margaret O'Sullivan Kane /ID # 220243
Attorney for Plaintiffs
1654 Grand Avenue
Suite 200
Saint Paul, Minnesota 55105
651/222-8611
mkane@kaneeducationlaw.com